## IN THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF OKLAHOMA

ORIGINAL INVESTMENTS, LLC, )
d/b/a DANK'S WONDER )
EMPORIUM, a Washington limited )
liability company, )
     )
        Plaintiff, )
     )
-vs- )     Case No. CIV-20-820-F
     )
THE STATE OF OKLAHOMA, THE )
OKLAHOMA STATE )
DEPARTMENT OF HEALTH, )
COLONEL LANCE FRYE, M.D., )
COMMISSIONER OF THE )
OKLAHOMA STATE )
DEPARTMENT OF HEALTH, THE )
OKLAHOMA MEDICAL )
MARIJUANA AUTHORITY, and )
DR. KELLY WILLIAMS, PhD, )
DIRECTOR OF THE OKLAHOMA )
MEDICAL MARIJUANA )
AUTHORITY, )
     )
        Defendants. )

## ORDER

      Selling marijuana is a criminal offense, punishable by imprisonment, *everywhere* in the United States. The dispositive question in the matter now before the court is whether the court should facilitate the plainly criminal activity in which plaintiff proposes to engage in the State of Oklahoma. The court declines to do so.

I.

Introduction

Plaintiff Original Investments, LLC, d/b/a Dank's Wonder Emporium, commenced this action, pursuant to 42 U.S.C. § 1983 and 28 U.S.C. § 2201, seeking declaratory and injunctive relief from the enforcement of section 427.14(E)(7) of the Oklahoma Medical Marijuana and Patient Protection Act, 63 O.S. § 427.1, *et seq.*, and implementing rules.  In its amended complaint, plaintiff asserts that the statute violates the dormant Commerce Clause of the United States Constitution because they discriminate against non-residents of Oklahoma.[1]  Specifically, plaintiff challenges section 427.14(E)(7) because it prohibits non-residents of Oklahoma from receiving Oklahoma medical marijuana business licenses and from owning more than 25 percent of any Oklahoma entity that has an Oklahoma medical marijuana business license.

Plaintiff alleges–and the court has absolutely no reason to doubt–that "[t]here is a vibrant marijuana industry" in the United States and in the State of Oklahoma. Amended Complaint, doc. no. 28, at 5.  Plaintiff, by its account, desires to "profit from Oklahoma's lucrative marijuana market." *Id.* at 8.  In pursuit of that objective, plaintiff desires to apply for an Oklahoma medical marijuana business license and to be the majority owner of an entity that has an Oklahoma medical marijuana business license.  To borrow Justice (then Judge) Gorsuch's phrase from a case involving distribution of marijuana in Colorado, plaintiff in the case at bar aspires, with the aid of this court, to "run [its] business with the blessing of state authorities but in defiance of federal criminal law." Feinberg v. Comm'r, 808 F.3d 813, 814 (10th Cir. 2015).  Plaintiff seeks a judgment declaring that section 427.14(E)(7) and

---

[1] Plaintiff is a Washington limited liability company with its principal place of business in Olympia, Washington.  Plaintiff is wholly owned by residents of Washington State, and all of its officers are residents of Washington State.

the implementing rules violate the United States Constitution and enjoining the enforcement of that section.

In its complaint, plaintiff named as defendants the State of Oklahoma, the Oklahoma State Department of Health, Colonel Lance Frye, M.D., Interim Commissioner of the Oklahoma State Department of Health, the Oklahoma Medical Marijuana Authority and Dr. Kelly Williams, Ph.D., Interim Director of the Oklahoma Medical Marijuana Authority.  After the pleadings closed, the parties filed motions for judgment on the pleadings under Rule 12(c), Fed. R. Civ. P.  The court dismissed plaintiff's complaint without prejudice as to all defendants based upon Eleventh Amendment immunity.  However, because it appeared that plaintiff might be able to amend its pleading to assert its claims against one or both of the state officials in their official capacities under the Supreme Court's ruling in Ex parte Young, 209 U.S. 123 (1908), the court allowed plaintiff to file an amended complaint.

Plaintiff filed an amended complaint against both named state officials in their official capacities.[2]  The amended complaint requests the court to enter a judgment declaring section 427.14(E)(7) unconstitutional under the United States Constitution and enjoining Dr. Williams and Dr. Frye, acting in their official capacities, from enforcing section 427.14(E)(7).  In response to the amended complaint, defendants have moved to dismiss the pleading, under Rule 12(b)(6), Fed. R. Civ. P., presenting two reasons for dismissal: (1) the Commerce Clause does not implicitly protect an

---

[2] In the body of the Amended Complaint, plaintiff recognizes that Dr. Williams is now Director of the Oklahoma Medical Marijuana Authority and identifies Dr. Williams as such.  Dr. Frye is identified as Interim Commissioner of the Oklahoma State Department of Health.  However, subsequent to the filing of the amended complaint, the Oklahoma Senate confirmed him as Health Commissioner.  *See*, https://oklahoma.gov/health/organization/commissioner-of-health.html (last accessed June 1, 2021).  The caption of this action has been amended to reflect the correct official capacities.

interstate market for marijuana because Congress has expressly criminalized distribution of marijuana under the Controlled Substances Act (CSA), 21 U.S.C. § 801, *et seq.*, and (2) the court should not use its equitable powers to support, aid, or encourage illegal conduct.  Plaintiff has responded to the motion, opposing dismissal of its complaint.  Defendants have filed a reply brief.  Having reviewed the parties' submissions, the court concurs with defendants' second reason for dismissal and finds that dismissal of plaintiff's complaint under Rule 12(b)(6) is appropriate.

II.
The Rule 12(b)(6) Standard

In reviewing a motion to dismiss under Rule 12(b)(6), the court accepts the well-pleaded allegations of the amended complaint as true and construes them in a light most favorable to the plaintiff.  Doe v. City of Albuquerque, 667 F.3d 1111, 1118 (10th Cir. 2012).  To withstand a motion to dismiss, the amended complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.  *Id.*  An affirmative defense, such as illegality, may be adjudicated on a motion to dismiss if the defense appears plainly on the face of the complaint.  Fourth Corner Credit Union v. Federal Reserve Bank of Kansas City, 861 F.3d 1052, 1058 (10th Cir. 2017) ("'If the defense appears plainly on the face of the complaint itself, the motion may be disposed of under [Rule 12(b)(6).]'") (quoting Miller v. Shell Oil Co., 345 F.2d 891, 893 (10th Cir. 1965)); *see also*, Wright & Miller, Federal Practice and Procedure § 1357 (3d ed. 2020) (assertion of illegality may be considered on a motion to dismiss under Rule 12(b)(6)).

III.
Defendants' Illegality Argument is Dispositive

Oklahoma has authorized the sale and use of marijuana for medicinal purposes.  Medical marijuana business licenses have been issued to applicants

meeting the Oklahoma residency requirements, permitting the growing, processing, dispensing, transporting, and testing of medical marijuana. *See*, 63 O.S. § 427.14(A) (enumerating the categories for which a medical marijuana business license is created). However, under federal law, specifically, the CSA, marijuana is classified as a Schedule I controlled substance, and with one exception not applicable here, it is a crime to produce or distribute marijuana. Gonzales v. Raich, 545 U.S. 1, 14 (2005). "The CSA designates marijuana as contraband for *any* purpose" and "by characterizing marijuana as a Schedule I drug, Congress expressly found that the drug has no acceptable medical uses." *Id*. at 27 (emphasis in original).[3] It is also a federal crime to aid, abet or counsel the production or distribution of marijuana. 18 U.S.C. § 2; United States v. Leos-Quijada, 107 F.3d 786, 794 (10th Cir. 1997).

Plaintiff seeks declaratory and injunctive relief to prohibit the enforcement of the residency requirements in section 427.14(E)(7) so it can obtain an Oklahoma medical marijuana business license to pursue economic opportunities in Oklahoma's medical marijuana market. As stated, defendants argue that the court should not use its equitable power to facilitate conduct that is illegal under federal law. The court agrees.

There is no dispute that the relief plaintiff seeks against the defendant state officials is equitable. It is well-settled, however, that "a court won't use its equitable power to facilitate illegal conduct." Fourth Corner, 861 F.3d at 1054 (citing cases). Plaintiff invokes the court's equitable powers to facilitate activity that is illegal under federal law. Absent the relief plaintiff seeks from this court, plaintiff cannot obtain a medical marijuana business license. And without that license, plaintiff is unable,

---

[3] It is worth noting that, in Gonzales, the Court squarely upheld the CSA when pitted against state marijuana legislation even on what it called "the troubling facts" of that case, 545 U.S. at 9, facts which, at least from a humanitarian standpoint, were assuredly more compelling than the facts of the case at bar.

on its own,[4] to grow, process, dispense, transport, or test medical marijuana in Oklahoma.

In response, plaintiff argues that the illegality defense overlooks Oklahoma's own "wrongdoing" in licensing 2,221 marijuana dispensaries to date and in discriminating against non-residents in violation of the United States Constitution in granting licenses.  Plaintiff points out that in <u>Johnson v. Yellow Cab Transit Co.</u>, 321 U.S. 383 (1944), the Supreme Court, in discussing the unclean hands doctrine, found that the doctrine "is not a rigid formula which trammels the free and just exercise of discretion."  *Id*. at 387 (internal quotation omitted).  The Court explained that while "a federal court should not, in an ordinary case, lend its judicial power to a plaintiff who seeks to invoke that power for the purposes of consummating a transaction in clear violation of law," the court need not "always permit a defendant wrongdoer to retain the profits of [its] wrongdoing merely because the plaintiff [itself] is possibly guilty of transgressing the law in the transactions involved."  *Id*. Plaintiff asserts that if it is engaged in any wrongdoing by owning 25 percent of several marijuana stores, Oklahoma is engaged in wrongdoing on a much larger scale, by licensing 2,221 dispensaries to sell medical marijuana and in doing so, discriminating against non-residents.  Plaintiff urges the court not to apply the illegality defense for Oklahoma's benefit, since it has created, and is now profiting from, an $800 million medical marijuana market which discriminates against non-residents of the state.

The court notes that the illegality defense raised by defendants is not based upon plaintiff's 25 percent ownership of medical marijuana dispensaries.  Rather, it is based upon plaintiff's pursuit of a decree from a federal court in order to obtain a

---

[4] Plaintiff alleges that it owns 25 percent of multiple licensed medical marijuana dispensaries in Oklahoma.

medical marijuana business license solely owned by it.  The court concludes that the Supreme Court's guidance in <u>Johnson</u> with respect to permitting "a defendant wrongdoer to retain the profits of [its] wrongdoing merely because the plaintiff [itself] is possibly guilty of transgressing the law in the transactions involved," 321 U.S. at 387, is not relevant here.  Denial of equitable relief will not permit Oklahoma to retain any profits of its alleged "wrongdoing" at plaintiff's expense.  Oklahoma will not be profiting by any alleged "wrongdoing."  Indeed, Oklahoma would benefit more by way of receipt of tax revenues if plaintiff and other nonresidents were able to obtain a medical marijuana business license.  The factual circumstances present in <u>Johnson</u> are not present in the case at bar.[5, 6]

Even assuming that the framework for the court's evaluation is "the [court's] free and just exercise of discretion," <u>Johnson</u> at 387, the court concludes that the circumstances confronting the court in this case warrant the denial of equitable relief.  Plaintiff seeks equitable relief so that it may obtain a medical marijuana business license or own the majority of a company holding such a license.  It seeks that relief in order to engage in activities that Congress has expressly declared to be criminal

---

[5] Nor are the factual circumstances in this case similar to those in <u>Northbay Wellness Group, Inc. v. Beyries</u>, 789 F.3d 956 (9th Cir. 2015), cited by plaintiff, where the Ninth Circuit reversed application of the unclean hands doctrine that absolved an attorney who stole $25,000 from his client, a medical marijuana dispensary, from nondischargeabililty of the debt, finding that while both the attorney and client shared responsibility for the illegal marijuana sales which generated the $25,000, the attorney's wrongdoing (stealing the money) outweighed the client's wrongdoing and that absolving of the attorney would be contrary to the public interest in holding attorneys to high ethical standards.  As discussed in this order, plaintiff has not identified "wrongdoing" by Oklahoma that tips the scale against application of the illegality defense.  Moreover, in the court's view, plaintiff has not identified a public interest that would be frustrated by application of the illegality defense.

[6] The court notes that in <u>Precision Instrument Mfg. Co. v. Automotive Maintenance Machinery Co.</u>, 324 U.S. 806, 814 (1945), the Supreme Court also stated that "[H]e who comes into equity must come with clean hands . . . It is a self-imposed ordinance that closes the doors of a court of equity to one tainted with inequitableness or bad faith relative to the matter in which he seeks relief, *however improper may have been the behavior of defendant*."  (emphasis added).

under federal law.  The Supreme Court has instructed that "a court sitting in equity cannot ignore the judgment of Congress, deliberately expressed in legislation." United States v. Oakland Cannabis Buyers' Co-op, 532 U.S. 483, 497 (2001) (internal quotation omitted).  While Oklahoma has authorized the use of marijuana for medicinal purposes but does not allow non-residents to have a license or own the majority of an entity that does, the court concludes that that activity (assuming without deciding that the latter constitutes "wrongdoing") does not tip the scale in favor of granting equitable relief in aid of plaintiff's proposed continuing course of activity criminalized under the express provisions of the CSA.  Granting plaintiff the equitable relief it seeks here would facilitate criminal activity more (by allowing non-residents to have medical marijuana business licenses) than would a denial of equitable relief.

Plaintiff also argues that the relief it requests would not facilitate any activity that it is not already engaged in since it currently owns 25 percent of multiple licensed dispensaries in the state.  With its ownership in the dispensaries, plaintiff asserts that it has already been profiting from the sale of marijuana in Oklahoma, with the state's blessing.  However, plaintiff does not dispute that the relief it specifically seeks from this court will, in fact, facilitate illegal activity as it will permit plaintiff to obtain a medical marijuana business license for itself to grow, process, dispense, transport, or test medical marijuana, all of which is criminal under the CSA.  Because the requested relief would facilitate criminal acts, the court "will not lend its aid to the perpetration of criminal acts."  Cartlidge v. Rainey, 168 F.2d 841, 845 (5th Cir. 1948).

In Fourth Corner, a state-chartered credit union, intending to service marijuana-related businesses, applied for a master account from the Federal Reserve Bank of Kansas City.  The bank denied the credit union's application.  The credit union sought a declaratory judgment that it was entitled to a master account and an

injunction requiring the bank to establish the master account.  The district court granted the bank's motion to dismiss, holding that it could not use its equitable power to grant a mandatory injunction that would facilitate criminal activity.

On appeal, the three Tenth Circuit judges on the panel each reached three different conclusions.  Each wrote a separate opinion, each of the three opinions effectively dissenting from the other two.  Reaching the merits of plaintiff's claim, Judge Nancy L. Moritz concluded that the district court's dismissal with prejudice should be affirmed based upon the bank's illegality argument.  She found that providing banking services to the marijuana-related businesses would facilitate activity that is prohibited by the CSA.  She determined that a master account at the bank would "serve as a linchpin for the [credit union's] facilitation of illegal conduct."  861 F.3d at 1055.  Judge Scott M. Matheson, Jr. concluded that the dismissal with prejudice should be vacated, and the case remanded with instructions to dismiss without prejudice on prudential-ripeness grounds.  In so concluding, Judge Matheson emphasized that the bank had not addressed whether it would grant a master account based upon the credit union's new allegation in the amended complaint that it would serve marijuana-related businesses only if doing so was legal.  Judge Robert E. Bacharach disagreed with Judge Matheson on the ripeness issue.  Judge Bacharach thought the court should take as true the account applicant's allegation that it would service marijuana-related businesses only if it was legal to do so.  861 F.3d at 1066.  He concluded that the dismissal should be reversed because the district court improperly discounted the credit union's allegation (also rejected by Judge Moritz) in the amended complaint that it would obey federal law.

While Judges Matheson and Bacharach approached the case differently than Judge Moritz, they did so on purely procedural grounds.  Indeed, in a reference to the merits of the matter, Judge Bacharach acknowledged that "servicing marijuana-related businesses is different, and the district court properly concluded

that this part of [the credit union's] plan would have violated federal drug laws." 861 F.3d at 1066.  Taking into account Judge Matheson's passing reference to the "Credit Union's continuing inability to conduct legal business," 861 F.3d at 1063, the views of Judges Moritz and Bacharach on the illegality issue may well have been the view of Judge Matheson as well.

Though the splintered decision in <u>Fourth Corner</u> is not precedent for anything, it is discernible that, as far as that panel is concerned, an enterprise proposing to conduct business in violation of the CSA would have tough sledding on the merits of the illegality issue.  In a case ripe for decision, Judge Moritz's view of the merits would carry the day.  Her view of the matter will be followed here.  The court accordingly concludes that plaintiff's attempt to distinguish the injunction requested by the credit union, purportedly "caus[ing] a whole shift in federal banking policy," from its requested relief, in this case, of "simply allow[ing] nonresidents to join residents on equal footing in selling marijuana in Oklahoma," doc. no. 30, pp. 12 and 13, provides no basis for avoidance of the illegality doctrine.

This conclusion as to the applicability of the doctrine of illegality is consistent with other decisions in this circuit.  A year and a half after the Tenth Circuit's decision in <u>Fourth Corner</u>, the Colorado bankruptcy court had before it a debtor whose main business consisted of selling equipment and supplies for use in growing marijuana.  <u>In re: Way to Grow, Inc.</u>, 597 B.R. 111 (Bankr. D. Colo. 2018).  The bankruptcy court, adhering to a pre-<u>Fourth Corner</u> decision from the Tenth Circuit Bankruptcy Appellate Panel (<u>In re: Arenas</u>, 535 B.R. 845 (10th Cir. BAP 2015)), concluded that it "cannot enforce federal law in aid of the Debtors because Debtors' ordinary course activities constitute a continuing federal crime."  *Id.* at 131-32. Relying mainly on the Bankruptcy Code's requirement of a good-faith reorganization plan, the district court affirmed the dismissal.  <u>In re Way to Grow, Inc.</u>, 610 B.R. 338, 346 (D. Colo. 2019).

IV.

Executive Branch Inaction is Irrelevant to the Court's Analysis

Plaintiff argues that because "[t]he federal government could shut down [the marijuana] market if it wished," but has not done so, the "usual constitutional rules should apply." Doc. no. 30, at 4. Plaintiff traces the history of this selective inaction by the executive branch as follows:

> This federal policy is expressed in a document known as the Cole Memorandum. The Cole Memorandum, issued during the Obama administration, was purportedly "rescinded" by Attorney General Sessions, *see Memorandum for all United States Attorneys: Marijuana Enforcement*, Office of the Attorney General (Jan. 4, 2018), but his successor, Attorney General Barr, told Congress that the Justice Department is "operating under my general guidance that I'm accepting the Cole Memorandum for now." *Review of the FY2020 Budget Request for DOJ*, 116th Cong. (Apr. 10, 2019) (testimony of William Barr, Att'y Gen. of the United States). The Biden administration has said nothing to the contrary.

Doc. no. 30, at 4.

It is a complete answer to this argument to observe that Mr. Cole did not pen his memorandum, and Mr. Barr did not give his testimony, on the authority of Article I of the Constitution. As Judge Gorsuch wrote in Feinberg: "[I]n our constitutional order it's Congress that passes the laws, Congress that saw fit to enact 21 U.S.C. § 841, and Congress that in § 841 made the distribution of marijuana a federal crime." Feinberg, 808 F.3d at 816. *See also,* the Colorado bankruptcy court's conclusion in Way to Grow: "This Court is bound to follow the law as written and may not depart therefrom based on enforcement decisions made by the executive branch." 597 B.R. at 133.

V.

Conclusion

Although the court does not (and need not) intimate any conclusion on the merits of the underlying constitutional claim in this case, it will note that the underlying claim is not frivolous.   In Action Wholesale Liquors v. Oklahoma Alcoholic Bev. Laws Enforcement Comm'n, 463 F.Supp. 2d 1294 (W. D. Okla. 2006), the undersigned held unconstitutional, under the Commerce Clause, the provisions of Oklahoma law which allowed in-state wineries, but not out-of-state wineries, to ship wine directly to retailers and restaurants in Oklahoma.   But trafficking in wine is legal under federal law; trafficking in marijuana is not.

For the reasons stated, the Motion to Dismiss on Behalf of Defendants (doc. no. 29) is **GRANTED**.  Plaintiff's Amended Complaint against defendants, Colonel Lance Frye, M.D., Commissioner of the Oklahoma State Department of Health, and Dr. Kelly Williams, M.D., Director of the Oklahoma Medical Marijuana Authority, is **DISMISSED WITH PREJUDICE** under Rule 12(b)(6), Fed. R. Civ. P. Judgment shall be entered forthwith.

IT IS SO ORDERED this 4th day of June, 2021.


STEPHEN P. FRIOT
UNITED STATES DISTRICT JUDGE

20-0820p004.docx

12